IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID SEIPLE,** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No.: 19-cv-2946 |
| | : | |
| **CRACKER BARREL OLD COUNTRY** | : | |
| **STORE, INC.,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                                       **November 5, 2021**

Presently pending before the Court is Defendant's Motion for Reconsideration (Mot. for Recon., ECF No. 35), Plaintiff's response thereto (Resp., ECF No. 37) and Defendant's reply in support (Reply, ECF No. 38). For the reasons that follow, Defendant's motion is **GRANTED**.

I.  **FACTUAL AND PROCEDURAL HISTORY**[1]

Defendant's "Promotional Process to General Manager" and "Pathway to Promotion"

---

[1] For additional background, see my April 22, 2021, memorandum granting in part and denying in part Defendant's motion for summary judgment. (Memo., ECF No. 33). The instant memorandum includes only factual and procedural history pertinent to the motion for reconsideration. Because Defendant asserts that this Court's partial denial of its motion for summary judgment resulted from an error of fact, the Court reviews the evidence in this matter anew. To the extent that the facts set forth in this memorandum differ from those in the earlier memorandum, the facts as stated herein shall guide my decision.

Citing Federal Rule of Civil Procedure 56(e)(2), Plaintiff observes that the Court may consider the evidence it cited in its Counterstatement of Material Facts undisputed due to Defendant's failure to file a response to that document. (Resp., ECF No. 37, at 7-8 (citing FED. R. CIV. P. 56(e)(2); *see also id.* at 3 n.1 (same))). Pursuant to Rule 56, if a party fails to address another party's alleged fact at the summary judgment stage, the court may: (1) allow the party another opportunity to do so; (2) treat the fact as undisputed for purposes of the motion; (3) permit the party to obtain affidavits or take discovery regarding the fact; or (4) issue some other appropriate order. FED. R. CIV. P. 56(e)(1)-(4). Here, the Court finds it appropriate to treat the facts in Plaintiff's Counterstatement as undisputed to the extent that they have support in the record evidence.

documents set forth how its employees may progress from Associate Manager (AM) to General Manager (GM).  (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Pathway to Promotion, ECF No. 29-3).  After graduating from Defendant's "Manager in Transition" program, employees receive a "status change to Associate Manager."  (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3).  AMs must then satisfy two criteria relevant to the instant motion for further promotion: they must complete Senior Associate Manager (SAM) Leadership Week and a "30- to 90-day observation period" as Acting General Manager (AGM) during which they must also "[a]chieve mutually agreed upon goals."  (*Id.*; *see also* Pathway to Promotion, ECF No. 29-3, at 3).  AGMs become eligible for bonuses and take on additional responsibilities, such as running one of Defendant's stores, but unlike AM, AGM does not constitute a "status change."  (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Seiple Tr., ECF No. 29-2, at 51:9-13; Pathway to Promotion, ECF No. 29-3, at 3 (noting that AGM is alternatively referred to as a "store run")).  Instead, Defendant's promotion policies describe AGM as a "role."  (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Pathway to Promotion, ECF No. 29-3, at 3).  After successful completion of SAM Leadership Week and the AGM role, the employee receives another "status change," this time to SAM.  (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3).  From this position, employees may apply for any open GM position at one of Defendant's locations.  (*Id.*).

In January 2015, Plaintiff was working at Defendant's Trevose, Pennsylvania location as an AM when his District Manager (DM),[2] Noelle Olesh, asked him to serve as the AGM at Defendant's Mount Laurel, New Jersey location.  (Seiple Tr., ECF No. 29-2, at 90:22-92:4).  Plaintiff expressed concern about alleged age discrimination against older managers in the past, but Olesh assured him that it was her "plan A . . . to get [him] to SAM class and have [him] take

---

[2] DMs and Regional Vice Presidents are responsible for store-level management promotions.  (Resp. to Mot. for Summ. J., ECF No. 29-13, at 3).

over that store." (*Id.* at 90:15-21). Plaintiff accepted and started later that week. (*Id.* at 92:23-93:4). Plaintiff knew that the AGM role normally only lasted three months.[3] (*Id.* at 146:14-15, 146:20-22, 150:13-14, 208:19, 213:6-7). The Mount Laurel store had no GM in place alongside Plaintiff as AGM, but AGMs sometimes operate Defendant's stores without a GM present. (*Id.* at 94:22-23; Olesh Tr., ECF No. 29-15, at 41:11-13).

In March 2015, Plaintiff attended SAM Leadership Week, the other criteria for advancement to SAM. (Mar. 20, 2015 SAM Seminar Evaluation, ECF No. 27, at Ex. E). He finished seventeenth in a class of 18 regarding his knowledge of Defendant's "objective[s]/initiative[s]" and received the lowest possible score – "1 Unacceptable" – in three other graded areas, "Team Player," "Learning Agility," and "Participation." (*Id.*).

In September 2015, Defendant relieved Plaintiff of his AGM duties and returned him to his AM position at the Trevose location. (Seiple Tr., ECF No. 29-2, at 50:19-51:1, 102:13-105:21). In March 2016, Plaintiff attended SAM Leadership Week a second time. (Mar. 18, 2016 SAM Seminar Evaluation, ECF No. 27 at Ex. E). This time, he finished sixteenth in a class of 21 and received ratings of "3 Meets Expectations" in "Team Player" and "2 Needs Improvement" in "Learning Agility" and "Participation." (*Id.*). On March 31, 2018, Plaintiff notified Defendant of his resignation, and he ceased working for Defendant the next day. (Seiple Tr., ECF No. 29-2, at 22:22-23:1).

On April 22, 2021, the Court granted in part and denied in part Defendant's motion for summary judgment. (Memo., ECF No. 33; Order, ECF No. 34). Specifically, the Court granted summary judgment on Plaintiff's disparate-treatment claim as to the refusal to promote him and

---

[3] Plaintiff would ultimately carry out AGM duties for approximately eight months. (Seiple Tr., ECF No. 29-2, at 50:19-51:1, 102:13-105:21). At least one other AGM performed the role for a similar period of time. (*See* Mostafa Tr. 31:6-8 (testifying that he performed AGM duties for "close to six months")).

on Plaintiff's disparate-impact claim, but denied summary judgment on Plaintiff's disparate-treatment claim as to his "demotion." (Memo., ECF No. 33, at 27; Order, ECF No. 34). On May 12, 2021, Defendant filed a motion for reconsideration as to the partial denial of summary judgment. (Mot. for Recon., ECF No. 35). Plaintiff filed a response on June 9, 2021, to which Defendant filed a reply on June 18, 2021. (Resp., ECF No. 37; Reply, ECF No. 38).

## II.   LEGAL STANDARD

"A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Beard v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-1162, 2016 WL 344300, at *1 (M.D. Pa. Jan. 28, 2016) (citation omitted). Reconsideration motions may not be used to raise new arguments or present evidence that could have been raised previously. *Hill v. Tammac Corp.*, No. 1:05-cv-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006) (citation omitted). "The purpose of the motion for reconsideration is to correct manifest error of law or fact or to present newly discovered evidence." *Hernandez v. United States*, 608 F. App'x 105, 109 (3d Cir. 2015) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). "A motion for reconsideration should only address 'factual and legal matters that the Court may have overlooked.'" *Elgert v. Siemens Indus., Inc.*, No. 17-1985, 2019 WL 3976409, at *5 (E.D. Pa. Aug. 22, 2015) (citation omitted). "It is improper that a motion for reconsideration 'ask the Court to rethink what [it] had already thought through—rightly or wrongly.'" *Id.* (citation omitted).

## III.   DISCUSSION

I previously granted summary judgment in favor of Defendant on Plaintiff's disparate-

4

treatment claim as to Defendant's refusal to promote him to GM and on Plaintiff's disparate-impact claim, but denied summary judgment on Plaintiff's disparate-treatment claim insofar as it concerned his "demotion" to AM.  (Memo., ECF No. 30, at 7).  Defendant seeks reconsideration of the partial denial of summary judgment for three reasons.  First, it claims that the Court overlooked evidence that Defendant returned Plaintiff to his AM position because of his poor performance at SAM Leadership Week, in addition to his poor performance as AGM.  (Memo. in Supp. of Mot. for Recon., ECF No. 35, at 3-4).  Next, it argues that it is undisputed that Plaintiff was not demoted[4] when he was relieved of his AGM duties and returned to his AM position.  (*Id.* at 4-7).  Similarly, it asserts that Plaintiff's assumption of AGM duties did not constitute a promotion from which Defendant could have demoted Plaintiff because the AGM role is only temporary and comes with no salary increase.  (*Id.* at 7-10).

Plaintiff responds that the Court should deny the motion for four reasons.  First, he maintains that the motion "does not meet the Third Circuit's requirements for a motion for reconsideration" because it "improperly reargues factual issues on previously available evidence."  (Resp., ECF No. 37, at 4-5).  Second, he contends that the evidence clearly shows that he suffered a demotion when Defendant removed him from AGM because he lost the opportunity to earn GM bonuses and suffered a diminution in rank and responsibilities.  (*Id.* at 6-

---

[4]  Indeed, Defendant maintains that Plaintiff "never raised a claim that he was demoted," but the Court disagrees.  (Memo. in Supp. of Mot. for Recon., ECF No. 35, at 2).  Although Plaintiff styled both of his claims as "Failure to Promote" under the Age Discrimination in Employment Act (ADEA) and Pennsylvania Human Relations Act (PHRA), in paragraph 34 of his Complaint he specifically pled that he suffered a "demotion from being the Acting General Manager at Store #484 [Mount Laurel, New Jersey]."  (Compl., ECF No. 1, at ¶ 34).  He also incorporated this averment in each of his claims.  (*Id.* at ¶¶ 55, 67).  In construing Plaintiff's pleading, "[m]ost relevant are the contents of the complaint and the substantive allegations made," not "technical form [or] the title of a cause of action . . . ."  *K.A. ex rel. Allebach v. Upper Perkiomen Sch. Dist.*, No. 11-2610, 2012 WL 2362565, at *2 (E.D. Pa. Mar. 12, 2012), *report & recommendation adopted by* 2012 WL 2362568 (E.D. Pa. June 21, 2012).

10). Third, Plaintiff posits that his performance at SAM Leadership Week could not have served as the reason for his return to AM because he remained in the AGM role for five months after he first attended SAM Leadership Week and was removed from the role six months prior to his attendance there a second time. (*Id.* at 10-12). Fourth, he points out that Defendant filed its motion late pursuant to Local Rule 7.1(g). (*Id.* at 12-13).

In reply, Defendant argues that the Court should granted reconsideration because it committed an error of fact regarding the nature and purported permanence of the AGM role. (Reply, ECF No. 38, at 1-3). It refutes the notion that it "replaced" Plaintiff and instead asserts that it eliminated the AGM role because it hired someone else for the GM position at the store after Plaintiff proved ineligible for it. (*Id.* at 3). Relying on *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632 (W.D. Pa. 2018), as well as other district and circuit court cases, Defendant asserts that Plaintiff's return to his AM position could not have been a demotion because the AGM role was merely temporary. (*Id.* at 3-5). Finally, it counters that, pursuant to Third Circuit guidance, judges within this district have waived the time requirements of Local Rule 7.1(g) when necessary to reach the merits of a reconsideration motion and the opposing party has not relied on the rule to its detriment. (*Id.* at 5 (citations omitted)).

The Court first considers Plaintiff's threshold arguments regarding the timeliness of and basis for the motion. It then considers the parties' substantive arguments concerning whether the Court based its prior ruling on summary judgment on an error of fact regarding the permanence of Plaintiff's AGM duties.

 A. **Timeliness**

Pursuant to Eastern District of Pennsylvania Local Rule of Civil Procedure 7.1(g), "[m]otions for reconsideration . . . shall be served and filed within fourteen (14) days after the entry of the order concerned . . . ." Loc. R. Civ. P. 7.1(g). Here, the Court entered its Order on

Defendant's summary judgment motion on April 22, 2021.  (Memo., ECF No. 33).  However, Defendant did not file for reconsideration until May 12, 2021, 20 days after the entry of the original Order.  (Mot. for Recon., ECF No. 35).  Thus, Defendant's motion is six days late.

Nonetheless, "a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000).  A court's interest in correcting potential factual or legal errors provides it with a sound basis to deviate from the requirements of a local rule, including Local Rule 7.1(g).  *Szostek v. Drexel Univ.*, No. 12-2921, 2013 WL 6667746, at *2 (E.D. Pa. Dec. 18, 2013) (waiving Local Rule 7.1(g) to address merits of alleged errors in summary judgment ruling), *aff'd*, 597 F. App'x 50 (3d Cir. 2015); *United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2013 WL 5924962, at *8 (E.D. Pa. Nov. 5, 2013) (correction of error is "a sound rationale for departing from Rule 7.1(g)").  Here, the Court has an interest in considering the substantive factual errors alleged by Defendant.  Moreover, Plaintiff has identified no unfair prejudice or detrimental reliance on Local Rule 7.1(g).  *See Galmines*, 2013 WL 5924962, at *8 ("[A]lthough Novartis argues that Mr. Galmines's Motion is untimely, Novartis suggests nothing in the way of prejudice from the additional six days Mr. Galmines took to file his Motion.").  Under these circumstances, "while not endorsing delayed filings, the Court concludes that it would be an abuse of the Court's exercise of its discretion to refuse to consider meritorious arguments because of the passage of less than one week where no harm from the passage of such time has befallen [Plaintiff]." *Id.*

Plaintiff's cited cases do not convince the Court that it should dismiss Defendant's motion for reconsideration as untimely.  In *Construction Drilling, Inc. v. Chusid*, a nonprecedential decision, the Third Circuit found that it lacked jurisdiction to review the district

court's earlier denial of a motion for reconsideration filed over two months after the underlying order. 90 F. App'x 630, 632 (3d Cir. 2004). Although the Third Circuit referenced the time requirements of both Federal Rule of Civil Procedure 59(e) and Local Rule of Civil Procedure 7.1(g), the conclusion that it lacked jurisdiction stemmed from the violation of Rule 59(e), not Local Rule 7.1(g). *See id.* (determining that it lacked jurisdiction because "[a]n untimely motion for reconsideration is 'void and of no effect'") (quoting *Amatangelo v. Borough of Donora*, 212 F.3d 776, 780 (3d Cir. 2000)); *see Amatangelo*, 212 F.3d at 780 (discussing motions under Rule 59(e), not Local Rule 7.1(g), and citing cases doing the same). However, Plaintiff agrees that Rule 59(e) does not apply in this case because it governs only motions pertaining to "final judgments," and "[t]he grant of partial summary judgment is not a final judgment . . . ." (*See* Resp., ECF No. 37, at 12-13 n.2 (quoting *Lizardo v. United States*, 619 F.3d 273, 283 (3d Cir. 2010); *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 152 (3d Cir. 1984))). Moreover, in a later precedential decision, *Wiest v. Lynch*, the Third Circuit concluded that Local Rule 7.1(g) does not impose a jurisdictional bar to a court's addressing an untimely motion for reconsideration. 710 F.3d 121, 127 (3d Cir. 2013) ("We see no jurisdictional bar due to Wiest's failure to move for reconsideration within the time constraints established by a local rule of court [Local Rule 7.1(g)]."). [5]

Further, in *Archway Insurance Services, LLC v. James River Insurance Co.*, the court considered a motion for reconsideration filed 41 days after the applicable order, in part because of possible justifiable confusion as to the filing deadline due to a supplemental briefing schedule, but also because the movant raised "tenable" arguments "deserv[ing] careful consideration" and

---

[5] In apparent contradiction of *Construction Drilling, Inc.*, the Third Circuit further concluded that Rule 59(e) is not jurisdictional as well. *Wiest*, 710 F.3d at 127 (citing *Lizardo v. United States*, 619 F.3d 273, 276-77 (3d Cir. 2010)). However, as noted, the instant motion does not involve this rule.

the respondent alleged no detrimental reliance on the rule. No. 09-2711, 2010 WL 5128367, at *3 (E.D. Pa. Dec. 8, 2010). In *Stroud v. Boorstein*, the court also considered an untimely motion for reconsideration – filed 29 days after the underlying order – because the plaintiff was pro se and because the defendant produced no evidence of prejudice or detrimental reliance, but this case does not stand for the proposition that waiver of Local Rule 7.1(g) is reserved only for unrepresented parties. No. 10-3355, 2012 WL 309631, at *4 (E.D. Pa. Jan. 31, 2012). Finally, *Kimmel v. Cavalry Portfolio Services, LLC* did not involve a late motion for reconsideration at all. No. 10-680, 2011 WL 3204841, at *2 (E.D. Pa. July 28, 2011).

Because the Court has "a sound rationale" for not applying Local Rule of Civil Procedure 7.1(g) and because Plaintiff has not shown that he relied to his detriment on the rule, the Court will not deny Defendant's motion as untimely.

**B.      Basis for the Motion**

Plaintiff contends that Defendant lacks a permissible basis to file a motion for reconsideration. (Resp., ECF No. 37, at 5). He argues that no change in the controlling law or existing evidence has occurred and that Defendant merely "reargues factual issues on previously available evidence." (*Id.*). He acknowledges that "a clear error of law or fact" is a proper basis but claims that Defendant has not identified one. (*Id.* (citing *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999))). Defendant replies that it filed its motion to correct the following error of fact: "that the position of Acting General Manager is an actual position in Cracker Barrel's organizational structure and one in which Mr. Seiple could have remained indefinitely." (Reply, ECF No. 38, at 1). It asserts that Plaintiff's response and the Court's earlier memorandum misstate Defendant's management hierarchy because AGM does not constitute an actual position to which its SAMs can be promoted but, on the contrary, an

9

interim "'role' that you play to demonstrate proficiency and achieve the status change to Senior Associate Manager." (*Id.* at 2).

Without yet addressing the merits of Defendant's argument, the Court agrees with Defendant that it has identified a potential error of fact warranting review. As explained in greater detail in the next section, if AGM was a temporary role in which Plaintiff knew that he could not remain indefinitely, he could not have suffered a demotion when Defendant returned him to AM because his assumption of AGM duties was not a promotion in the first place. *See, e.g., Jokamas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 643 (W.D. Pa. 2018). Thus, whether this alleged fact is based upon new evidence or not, it constitutes a proper basis for Defendant's motion "because a motion for reconsideration may be granted even when the evidence was previously available in order to prevent manifest injustice . . . ." *Kimmel*, No. 10-680, 2011 WL 3204841, at *2. Accordingly, the Court turns its consideration to whether it based its prior ruling upon an error of fact, namely, that Plaintiff introduced evidence that he suffered a demotion from a permanent position when Defendant removed him from AGM and returned him to AM.

### C. **Whether Plaintiff Was Demoted**

A demotion constitutes an adverse employment action necessary to establish a claim under the ADEA and PHRA. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411-12 (3d Cir. 1999) (citations omitted); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 & n.5 (3d Cir. 1998); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (an adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.") (quotation omitted). However, "where an employee receives a temporary promotion and then reverts back to her original position, courts have consistently held that this reversion is not an adverse employment action." *Jakomas*, 342 F. Supp. 3d at 644 (collecting circuit and district court cases). This principle holds

true even if the interim position involves additional responsibilities and compensation, has no predetermined duration, or is repeatedly extended. *Id.* at 644; *Escamilla v. Kirk*, No. 5:05-CV-164, 2007 WL 689860, at *5 (W.D. Mich. Mar. 2, 2007); *Forkkio v. Tanoue*, 131 F. Supp. 2d 36, 42-43 (D.D.C. 2001), *aff'd*, 306 F.3d 1127 (D.C. Cir. 2002). To constitute an adverse employment action, the removal of an employee from an interim position requires that the employer had previously made "a specific promise" to hire the employee on a permanent basis or extend his current position beyond the point at which he is removed from it. *Sanders v. Nicholson*, 316 F. App'x 161, 165 (3d Cir. 2009). However, if the employee is not entitled to and has no reasonable basis to believe that the position is permanent, reassignment to the original position is not a demotion. *Jakomas*, 342 F. Supp. 3d at 644.

As the court in *Jakomas* held, an employee who receives a temporary upgrade in his position is, in reality, "never promoted in the first place." *Id.* at 643-44. In that case, the plaintiff assumed managerial responsibilities and received increased salary as an "Acting Manager," but was aware that the role was not permanent. *Id.* She claimed that her return to her prior position was a demotion constituting an adverse employment action under the Americans with Disabilities Act, but the court disagreed and entered summary judgment in favor of her employer as to the claim. *Id.* at 644. The court reasoned that after the plaintiff's return to her original position she had merely "reverted back to the *status quo ante*" and "was no worse off than she was prior to temporarily assuming the Acting Manager duties . . . ." *Id.*; *see also Forkkio*, 131 F. Supp. 2d at 42 (when an interim position concludes and the employee returns to a permanent one he does "not lose a term or condition of employment to which he had anything but a temporary entitlement"). It determined that where a plaintiff has no reasonable expectation of remaining in the role, "the discontinuation of an advantageous employment situation is not an adverse employment action . . . ." *Jakomas*, 342 F. Supp. 3d at 644.

As Defendant points out, Plaintiff does not actually contend that AGM is a permanent position. (Reply, ECF No. 38, at 2). Indeed, Defendant's "Promotional Process to General Manager" states that it lasts "30-90 day[s]," while its "Pathway to Promotion" states that it may "run for up to 90 days." (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Pathway to Promotion, ECF No. 29-3, at 4). Significantly, Plaintiff was well aware of this temporal limitation. (*See* Seiple Tr. ECF No. 29-2, at 146:14-15 ("That's what it says, run a store, one to three months."), 146:20-22 ("you're at a store actually working for that one to three months or two months"), 150:13-14 ("you have to run a store for a period of one to three months"), 208:19 ("If you run a store, it's three months."), 213:6-7 ("You run a store from a period to [sic] a month to three months.")). Plaintiff points out that he operated the Mount Laurel store for eight months, but the fact that his time in that role was extended or of unspecified duration did not transform it into a permanent position. (Resp., ECF No. 37, at 10; *Forkkio*, 131 F. Supp. 2d at 42-43; *Escamilla*, 2007 WL 689860, at *5). Although Defendant sometimes extended AGMs beyond three months, nowhere does Plaintiff point to any individual who carried out AGM responsibilities on a permanent basis. (*See, e.g.,* Mostafa Tr. 31:6-8 (testifying that he performed AGM duties for "close to six months")).

The very name "Acting" General Manager further suggests that the position is not permanent, as does its description in the relevant documents. *See Jakomas*, 342 F. Supp. 3d at 644. Defendant's policies describe it as a "role," whereas the positions listed below and above it – AM and SAM – are "status change[s]." (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Pathway to Promotion, ECF No. 29-3, at 4). The AGM role is only an "observation period," sometimes also referred to as a "store run," during which the employee must "[a]chieve mutually agreed upon goals." (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Pathway to Promotion, ECF No. 29-3, at 3-4). The employee must "[c]omplete 'Acting GM Role'" as one of the criteria

for promotion to SAM, from which he or she may then "apply for an open GM position," but AGM is not a permanent position in its own right. (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3).

Plaintiff claims that he was not completing a "temporary 'store run' associated with the SAM program" because the Mount Laurel store had no GM in place and because he could have completed one at the store in Trevose, which had a GM and where he had worked as AM. (Resp., ECF No. 37, at 9-10). He maintains that no evidence exists that his "AGM position simply expired or that he was 'rotating out' of the position pursuant to Cracker Barrel policy . . . ." (*Id.* at 10). He argues that his performance at SAM Leadership Week was not the true reason for his return to AM because he first attended it five months before Defendant took away his AGM duties and attended it a second time six months after Defendant placed him back in his prior position. (*Id.* at 10-12). He contends that his return to AM constituted a demotion because it negatively impacted his pay, rank and responsibilities. (*Id.* at 9-10).

Plaintiff's contention that Defendant did not place him at and later remove him from the Mount Laurel store pursuant to its established promotion policy is contradicted by the evidence. At the time that Olesh asked Plaintiff to assume the AGM role there, Plaintiff and she discussed his later possible promotion to GM. She assured him that her "plan A" was to send Plaintiff "to SAM class and have [him] take over that store" as GM.[6] (Seiple Tr., ECF No. 29-2, at 90:15-17). To this end, after completing the necessary prerequisites, Defendant approved Plaintiff for and sent him to SAM Leadership Week two months after assuming AGM duties. (*Id.* at 104:20-24, 170:15-19, 171:23-172:2). However, Plaintiff performed poorly there, rendering him

---

[6] Notably, Olesh never made "a specific promise" to promote Plaintiff permanently, such that his return to his prior position might have constituted an adverse employment action. *See Sanders*, 316 F. App'x at 165. Rather, her statement indicates that that was merely the "plan," subject to his successful completion of SAM Leadership Week.

ineligible for promotion to SAM, the position from which employees apply for GM. (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Mar. 20, 2015 AM Seminar Evaluation, ECF No. 27, at Ex. E). Nor could Plaintiff remain permanently as AGM because it is only an interim or temporary role for employees making the transition from AM to SAM. (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3). Accordingly, Defendant returned Plaintiff to his AM position. (*See id.*).

If, as Plaintiff posits, Defendant had hired him into an acting but "permanent" GM position at the Mount Laurel store because it had no GM, no reason would have existed to send Plaintiff to SAM Leadership Week. If Plaintiff was performing GM duties on his own and on a permanent basis, he would seemingly have little purpose to obtain SAM certification and apply for a GM position that, in effect, he already had. Further, the fact that Plaintiff occupied an AGM role without a GM in place does not change the nature of the position. Not all Defendant locations with an AGM also have a GM, and nothing in Defendant's promotion policy documents require that an AGM perform his or her duties without a GM present to receive a promotion to SAM. (Def.'s Mot. for Summ. J., ECF No. 27, at Ex. 3; Pathway to Promotion, ECF No. 29-3, at 4; Olesh Tr., ECF No. 29-15, at 41:11-13).

Plaintiff's argument regarding the timing of his return to the Trevose store as an AM vis-à-vis his attendance at SAM Leadership Week is also unconvincing. He first attended SAM Leadership Week in March 2015, Defendant relieved him of his AGM duties in September 2015, and he attended SAM Leadership Week a second time in March 2016. (Seiple Tr., ECF No. 29-2, at 102:13-105:21, 141:11-13, 171:23-172:2). Plaintiff cites no evidence that Defendant was required to end his run as AGM immediately or even within a specified time after he became ineligible for promotion to SAM due to his initial poor performance at SAM Leadership Week. As noted, the further continuation of Plaintiff's interim role did not make it a permanent one.

*Forkkio*, 131 F. Supp. 2d at 42-43; *Escamilla*, 2007 WL 689860, at *5.  In addition, Plaintiff observes that Defendant refers to his second performance at SAM Leadership Week in March 2016 "as a basis for his lack of promotion."  (Resp., ECF No. 37, at 11 (citing Memo. in Supp. of Mot. for Summ. J., ECF No. 35, at 3-4)).  Plaintiff correctly notes that the results of his second stint at SAM Leadership Week were "wholly unrelated" to the termination of his AGM duties in September 2015, but Defendant does not suggest otherwise.  (Memo. in Supp. of Mot. for Summ. J., ECF No. 35, at 3 (quoting Olesh testimony regarding Plaintiff's performance at both SAM Leadership Weeks as a reason "why he was not going to get promoted to SAM"); Resp., ECF No. 37, at 11).

Finally, Plaintiff's argument that he suffered a demotion, and thus an adverse employment action, because his return to AM entailed a "change in pay, rank and responsibilities" has no merit.  (Resp., ECF No. 37, at 9).  The termination of a temporary or "acting" role is not a demotion even if it causes the employee to lose pay, rank and responsibilities tied to the role.  *See Jakomas*, 342 F. Supp. 3d at 644 (the loss of "Acting Manager" designation, "acting pay" and associated "managerial duties and supervisory responsibilities" was not a demotion); *see also Atkins v. Boeing Co.*, Civ. A. No. 91-1404-MLB, 1993 WL 186170, at *7-8 (D. Kan. May 5, 1993), *aff'd*, 28 F.3d 112 (10th Cir. 1994) (a reduction in position "grade" and salary and loss of supervisory duties was not a demotion where the position was temporary).

The Court's prior ruling that AGM is an actual position within Defendant's management hierarchy to which one can be promoted and from which one can be demoted was a clear error of fact warranting reconsideration.  Because AGM is merely an interim role, not a permanent position, Plaintiff did not suffer an adverse employment action when Defendant relieved him of his AGM duties.  As such, he cannot establish a prima facie claim under the ADEA and PHRA,

15

and the Court must grant Defendant's motion and enter summary judgment in its favor and against Plaintiff on his disparate-treatment "demotion" claims as well. *See Jones*, 198 F.3d at 411-12.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for reconsideration. The Court enters summary judgment in favor of Defendant on all remaining claims.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge